IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

STACEY A. CLOUSE,                                     No. 6:16-cv-00084-HZ

                          Plaintiff,                  OPINION & ORDER

        v.

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

                          Defendant.

John E. Haapala, Jr.
401 E. 10th Avenue, Suite 240
Eugene, OR 97401

            Attorney for Plaintiff

Janice E. Hebert
Assistant United States Attorney
U.S. Attorney's Office, District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204

Gerald Hill
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

      Attorneys for Defendant

HERNÁNDEZ, District Judge:

      Plaintiff Stacey Clouse brings this action for judicial review of the Commissioner's final decision denying her application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act and Disability Insurance Benefits (DIB) under Title II of the Social Security Act. This Court has jurisdiction under 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1382(c)(3)). The Commissioner's decision is reversed and remanded for further proceedings.

## PROCEDURAL BACKGROUND

      Plaintiff applied for DIB on May 16, 2012, alleging an onset date of November 20, 2011. Tr. 166.[1] Her application was denied initially and on reconsideration. Tr. 75-87, 97-100. On January 11, 2013, Plaintiff applied for SSI. Tr. 171-76. On May 8, 2014, Plaintiff appeared, with counsel, for a hearing before an Administrative Law Judge (ALJ). Tr. 26-59. Plaintiff amended her alleged onset date to January 1, 2013. Tr. 34. On May 29, 2014, the ALJ found Plaintiff not disabled. Tr. 20. The Appeals Council denied review. Tr. 2.

## FACTUAL BACKGROUND

      Plaintiff alleges disability based on varicose veins and blood clots in her legs which cause pain and inflammation, or phlebitis. Tr. 31, 37, 188. Plaintiff was 45 years-old at the time

---

[1] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record, filed herein as Docket No. 14.

of the administrative hearing. *Id.* Plaintiff attended college and was a certified pharmacy technician. Tr. 194.

## SEQUENTIAL DISABILITY ANALYSIS

A claimant is disabled if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. *See, e.g., Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009). The claimant bears the ultimate burden of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert,* 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. 137 at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

In step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can, the claimant is not disabled. If the claimant cannot

perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets his burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since January 1, 2013, the alleged onset date. Tr. 12. Next, at steps two and three, the ALJ determined that Plaintiff has the following severe impairments: varicose veins and obesity. *Id.* However, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 13. At step four, the ALJ concluded that Plaintiff has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) and § 416.967(a), "except she is further limited to no more than occasional pushing and pulling with her bilateral lower extremities. *Id.* The ALJ concluded that Plaintiff is unable to perform any past relevant work. Tr. 18. However, at step five the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as addresser, sorter, and photocopy machine operator. Tr. 19. Thus, the ALJ concluded that Plaintiff is not disabled. Tr. 20.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence" means "more than a mere scintilla, but less than preponderance."

*Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

The court must weigh the evidence that supports and detracts from the ALJ's conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)). The reviewing court may not substitute its judgment for that of the Commissioner. *Id.* (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)); *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Id.*; *see also Batson*, 359 F.3d at 1193. However, the court cannot not rely upon reasoning the ALJ did not assert in affirming the ALJ's findings. *Bray*, 554 F.3d at 1225-26 (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).

## DISCUSSION

Plaintiff contends that the ALJ erred by (1) rejecting the opinion of treating physician Dr. McMahon; (2) discounting Plaintiff's credibility; and (3) dismissing the testimony of Plaintiff's significant other, Mr. Maerz. The Court agrees that the ALJ erred in his treatment of Dr. McMahon's opinion but otherwise affirms the ALJ's conclusions.

## I.    Treating Physician Dr. McMahon

Plaintiff argues that the ALJ erred by rejecting treating provider Dr. McMahon's opinion. There are three types of medical opinions in social security cases: those from treating, examining, and non-examining doctors. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The medical opinion of a claimant's treating physician is entitled to "special weight" because "he is employed to cure and has a greater opportunity to know and observe the patient as an

individual." *Rodriguez v. Bowen*, 876 F.2d 759, 761 (9th Cir. 1989) (citation omitted). The ALJ may reject the uncontradicted opinion of a treating or examining physician by providing clear and convincing reasons supported by substantial evidence in the record. *See Lester*, 81 F.3d at 830-31; *Andrews*, 53 F.3d at 1043.

If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence. *Barnhart*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830-31). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted). Further, an ALJ may reject a physician's opinion if it conflicts with the physician's other findings. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Although the contrary opinion of a non-treating medical expert does not alone constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, it may constitute substantial evidence when it is consistent with other independent evidence in the record. *Magallanes*, 881 F.2d at 752.

Dr. McMahon has been Plaintiff's treating physician since at least 2008. Tr. 405. Plaintiff has a history of varicose veins beginning with her first pregnancy in the late 1990s. She has had three unsuccessful surgeries to attempt to relieve her symptoms. Tr. 50. In October of 2008, Dr. McMahon reviewed Plaintiff's past medical history, including a history of varicose veins and phlebitis, and noted no changes. Tr. 404. In December of 2012, Dr. McMahon treated Plaintiff and noted her complaints of left ankle, left leg, and right shoulder pain. Tr. 481. Dr. McMahon noted that Plaintiff had quit her job at Fred Meyer. *Id.* Plaintiff then tried a "sit down job" at Harry & David but had to quit because she could not sit for any length of time due to her leg

pain. *Id.* After she quit, Plaintiff could not walk for three days and had increased edema and new

upper leg pain. *Id.* In May of 2013, Plaintiff reported increased back and ankle pain. Tr. 478. In

the May 8, 2013 chart note and several subsequent notes, Dr. McMahon noted large verrucous

tender veins without overt erythema, positive straight leg raises, degenerative disc disease,

varicose veins and, at times, uterine bleeding. *See, e.g.,* Tr. 480 (May 12, 2013); Tr. 476 (Aug.

22, 2013); Tr. 474 (September 17, 2013).

Dr. McMahon provided his medical opinion through a telephonic interview, which he

affirmed by signature on April 22, 2014. Tr. 509-512. When asked for the "main diagnoses for

which he has treated [Plaintiff]," Dr. McMahon responded: "Multiple things. Varicose veins,

which cause her pain and disc pathology in her spine. The symptoms from the veins make it

difficult for her to function." Tr. 509. Additionally, Dr. McMahon stated:

> The prognosis is poor. In my 18 years as a family doctor it is the worst case I have seen.
> She has had surgery and vein stripping and . . . if you see her you would understand this
> is a very bad case. She has had to go through a lot.

*Id.* Dr. McMahon opined that Plaintiff could not stand or sit all day, even with position changes.

Tr. 510. He stated that Plaintiff takes narcotics, which make her fatigued and affect her ability to

concentrate. *Id.* As to Plaintiff's residual functional capacity, Dr. McMahon opined that "[o]ut of

an 8-hour work day she could stand/walk less than two hours a day and she could sit less than

two hours a day as long as it is not all at the same time." *Id.* According to Dr. McMahon,

Plaintiff would need breaks for 15 minutes every hour due to pain and swelling. Tr. 511. In

addition, any type of prolonged sitting would lead Plaintiff to need to have her legs elevated. *Id.*

In an 8-hour work day, Plaintiff would need to elevate her legs for half of the day. *Id.* Problems

with attention and concentration would interfere with Plaintiff's ability to perform simple work

tasks about 25% of the time. Tr. 512. Finally, Dr. McMahon opined that Plaintiff would miss four or more workdays a month due to health issues. *Id.*

The ALJ provided three reasons to afford "little weight" to Dr. McMahon's opinions: (1) his opinion conflicted with his treatment notes; (2) his opinion conflicted with Plaintiff's reports of daily activities; and (3) the format of his opinion detracted from its reliability. Tr. 18. Because Dr. McMahon's opinion is contradicted by the opinions of nonexamining physicians Dr. Kehrli (Tr. 318); Dr. Lahr (Tr. 72); and Dr. Berner (Tr. 86); the ALJ must provide specific and legitimate reasons that are supported by substantial evidence to reject Dr. McMahon's opinion. *See Barnhart*, 427 F.3d at 1216. The ALJ fails to provide such reasons.

A.  Treatment Notes

The ALJ found that Dr. McMahon's opinion was materially inconsistent with his own treatment notes. Tr. 18. "A conflict between treatment notes and a treating provider's opinions may constitute an adequate reason to discredit the opinions of a treating physician[.]" *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014). However, four of the five alleged conflicts identified by the ALJ in this case are not, in fact, conflicts. Therefore, the Court disagrees that Dr. McMahon's opinion is materially inconsistent with his treatment notes.

The ALJ stated that Dr. McMahon "identified significant areas of deficit in [Plaintiff's] ability to pay attention and/or concentrate; however he repeatedly described her as having adequate attention/concentration during examinations." *Id.* As Plaintiff points out, the ALJ did not identify any particular treatment note where Dr. McMahon described Plaintiff's attention or concentration as adequate. Nor does Defendant identify any treatment note. Instead, Defendant points to Dr. McMahon's notes from an April 18, 2014 visit in which Plaintiff sought treatment for an acne outbreak. *See* Tr. 518. In those notes, Dr. McMahon described Plaintiff:

> Mental status: normal mood and affect and active and alert. Orientation to time, place, and person. Memory: recent memory normal and remote memory normal.

Tr. 518. Nothing about this description conflicts with Dr. McMahon's opinion that Plaintiff's medication can affect her ability to concentrate. Tr. 510. Defendant also points to several parts of the record where Plaintiff and her significant other, Mr. Maerz, denied that Plaintiff has difficulty with concentration or attention. However, the ALJ did not point to any statements by Plaintiff or Mr. Maerz as a reason to discount Dr. McMahon's opinion and, thus, the Court may not rely on Defendant's *post hac* rationalization. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (court cannot affirm finding based on reasons or evidence that the ALJ did not discuss); *see also Mai Chang v. Comm'r of Soc. Sec. Admin.*, 507 F. App'x 698, 699 (9th Cir. 2013) ("we cannot affirm based on a rationale the ALJ never specifically articulated") (citing *Bray*, 554 F.3d at 1226).

The ALJ's second assertion regarding a conflict between Dr. McMahon's opinion and his treatment notes is also unsupported by the record. According to the ALJ, a contradiction exists between Dr. McMahon's description on April 18, 2014 of Plaintiff having asymptomatic varicose veins and his functional opinion four days later, which included substantial limitations based on varicose veins. Dr. McMahon's treatment notes reflect that Plaintiff's thrombosis and phlebitis were episodic. Sometimes Plaintiff had no symptoms and other times she had significant pain due to her varicose veins. *See, e.g.,* Tr. 474 (9/17/13: many tender varicose veins, "severe even to light touch"); Tr. 476 (8/22/13: new and painful varicose vein on left leg); Tr. 348 (8/28/12: broken vein in back of right leg); Tr. 361 (11/3/11: "bad" vein in her left leg); Tr. 368 (2/24/11: right leg pain); Tr. 375 (1/6/11: varicose veins complicating ankle wound); Tr. 386 (6/3/10: upper leg pain from varicose veins). As Plaintiff notes, and Defendant does not refute,

the ALJ focused on the "one treatment note in six years [that] listed plaintiff's varicose veins as 'asymptomatic.'" Pl.'s Br. 11, ECF 16. Because treatment records must be "read in context of the overall diagnostic picture," *Ghanim*, 763 F.3d at 1162, the ALJ erred by isolating one comment and using it to create a conflict with Dr. McMahon's opinion.

The ALJ presented two other unsupported examples in which Dr. McMahon's notes allegedly conflict with his opinion. First, the ALJ stated that Dr. McMahon's notes indicate that Plaintiff requires frequent changes of position, but his functional opinion specifically indicated that changes of position were not helpful to Plaintiff. However, as Plaintiff argues, Dr. McMahon did not, in fact, indicate in his functional opinion that changes of position were not helpful. Instead, he stated that, even with position changes, Plaintiff could not sit or stand all day. Tr. 510 ("She can't sit all day either even with position changes."). Second, the ALJ stated that Dr. McMahon did not document consistent findings of swelling in the lower extremities, yet he assigned a limitation to this symptom. Dr. McMahon, however, did document findings of swelling and edema. *See, e.g.* Tr. 354, 481. Defendant does not address Plaintiff's arguments as to either of these examples.

The Court affirms only one of the reasons the ALJ provided to discount Dr. McMahon's opinion. The ALJ stated that Dr. McMahon failed to explain or offer any objective support for his conclusion that Plaintiff would be absent four or more days per month. Plaintiff concedes Dr. McMahon's lack of support for his conclusion, but argues that Dr. McMahon's assessed limitation "flows directly from his treatment notes." Pl.'s Br. 12. While Defendant does not respond to Plaintiff's argument, the Court disagrees. As Plaintiff acknowledges, the treatment notes "illustrate varying degree of symptoms," including occasions where Plaintiff's varicose veins were asymptomatic. Pl.'s Br. 10. The treatment notes do not lead to an inevitable

conclusion that Plaintiff would miss four or more days per month of work. Thus, the ALJ properly discounted the weight given to this portion of Dr. McMahon's opinion because it is unsupported by his treatment notes. However, even if the ALJ correctly declined to credit Dr. McMahon's opinion regarding Plaintiff's absenteeism, this does not provide a basis for rejecting the overall credibility of Dr. McMahon's opinion.

### B.  Daily Activities

The ALJ also erred when he found that Dr. McMahon's opinion was inconsistent with Plaintiff's reported activities, such as playing tennis once or twice weekly. Plaintiff testified that she "might" play tennis once or twice a week "as long as her veins were not inflamed. Tr. 45. She also testified that, if she played tennis, she would be "retired to the chair for the rest of the night" due to pain and inflammation. *Id.* Plaintiff described exercising as "difficult." *Id.* Contrary to the ALJ's conclusion, Dr. McMahon's limitations are not inconsistent with Plaintiff's testimony.

### C.  Format of Medical Opinion

The ALJ noted that Dr. McMahon's opinion was written by Plaintiff's attorney, summarizing a conversation between the two, and adopted by Dr. McMahon. The ALJ wrote that "the format of this opinion detracts from its reliability." Tr. 18. Neither party addresses the ALJ's statement. The Ninth Circuit has held that an ALJ may question the credibility of a treating physician where that physician's opinion letter was solicited by the claimant's counsel *and* where the ALJ also presents other valid reasons for rejecting that physician's opinion. *Burkhart v. Bowen,* 856 F.2d 1335, 1339 (1988); *see also Saelee v. Chater*, 94 F.3d 520, 522–23 (9th Cir. 1996), as amended (Aug. 12, 1996). Standing alone, however, or even combined with the lack of support for the absenteeism statement, the format of Dr. McMahon's opinion is not a specific

and legitimate reason to discount his credibility. In sum, the Court does not affirm the ALJ's

decision to discount the weight given to Dr. McMahon's opinion.

## II.    Plaintiff's Credibility

Plaintiff contends that the ALJ failed to provide clear and convincing reasons for

rejecting her testimony about her impairments and their limiting effects. In assessing the

credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the

ALJ engages in a two-step analysis. 20 C.F.R. § 404.1529. First, the ALJ determines whether

there is objective medical evidence of an underlying impairment that could reasonably be

expected to produce some degree of symptoms. *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir.

1996). If such evidence exists, and barring affirmative evidence of malingering, the ALJ must

give clear and convincing reasons for discrediting the claimant's testimony regarding the severity

of the symptoms. *Id.* at 1284; *see also Brown-Hunter v. Colvin*, 806 F.3d 487, 492–93 (9th Cir.

2015). If the record contains affirmative evidence of malingering, the ALJ need only provide

specific and legitimate reasons for an adverse credibility finding. *Morgan v. Comm'r*, 169 F.3d

595, 599 (9th Cir. 1999).

The ALJ may consider many factors in weighing a claimant's credibility, including: (1)

ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior

inconsistent statements concerning the symptoms, and other testimony by the claimant that

appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or

to follow a prescribed course of treatment; and (3) the claimant's daily activities. *Tommasetti*,

533 F.3d at 1035. In addition, conflicts between a claimant's testimony and the objective medical

evidence in the record can undermine a claimant's credibility. *Morgan*, 169 F.3d at 600. Where

the ALJ's credibility findings are supported by substantial evidence in the record, the reviewing

court "may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir.

2002). However, a general assertion that plaintiff is not credible is insufficient; the ALJ must

"state which . . . testimony is not credible and what evidence suggests the complaints are not

credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *see also Morgan*, 169 F.3d at

599.

Plaintiff worked for approximately twelve years as a pharmacy technician at Fred Meyer,

which was mainly a "standing job." Tr. 35, 42, 243. Plaintiff alleged an onset of disability of

November 20, 2011; however, at her administrative hearing, she amended her onset date to

January 31, 2013. Tr. 32-34. She acknowledged that she had SGA-level earnings in 2012. *Id.*

According to Plaintiff, she loved her job at Fred Meyer and did not want to stop working.

Tr. 51. However, the requirement to stand meant that Plaintiff broke a vein approximately every

3-6 months. Tr. 52. She bought a cane but her employer would not allow her to use it. *Id.* Then,

she tried working on "light duty" but she was unable to perform the duties. *Id.* Finally, she quit

in November of 2012 because the job "was too much" for her. *Id.*

After quitting Fred Meyer, Plaintiff attempted to work a "sitting-down job" at Harry &

David. Tr. 36, 42. However, she lasted only two or three weeks because the job requirement to

sit all day was too painful. *Id.* Plaintiff's ankle swelled and she had to use a wheelchair. *Id.*

While she remained on Harry & David's "layoff list" to be called back if needed, she was never

called. *Id.* She continued to apply for other jobs but did not receive any interviews. Tr. 37.

Plaintiff testified that she is unable to work due to inflammation and pain in her legs. *Id.*

She is unable to sit or stand for any length of time. *Id.* According to Plaintiff, she can sit for

about 20 minutes at a time and she can stand for about 30-40 minutes at a time "on a good day."

Tr. 51. She testified that sitting is more difficult for her than standing. Tr. 52. Plaintiff elevates

her feet "most of the time" when she is at home. Tr. 44. Plaintiff wear slippers most of the time because she has very limited agility in her lower legs due to nerve damage. Tr. 47.

As to Plaintiff's daily activities, she testified that she lives with Mr. Maerz and her three sons. Tr. 38. Mr. Maerz does the majority of household chores, such as cleaning, laundry, and meal preparation. Tr. 39. Plaintiff only drives approximately once a month. Tr. 40. Mr. Maerz usually drives Plaintiff to the grocery store and helps her as much as possible. Tr. 40. If she will be in the store for a long time, she uses a "riding cart." Tr. 40.

Plaintiff testified that she does not attend church or any school activities like teacher-parent conferences or musical activities because it is difficult for her to sit for any length of time. Tr. 39, 45. However, she also testified that she attended her son's school performance "the other night," because she could stand for the 30-40 minuteshow. Tr. 40.

Plaintiff acknowledged that her doctor has suggested exercising 20-40 minutes a day. Tr. 41. Plaintiff testified that she is "not good at walking," but she plays tennis if she does not have any inflamed veins. Tr. 41. When she does play tennis, she says that she is "retired to the chair for the rest of the night" due to pain and inflammation in her legs. Tr. 45. She testified that her family had a boat and a trailer; however, they had not used either in over a year. Tr. 41.

The ALJ found Plaintiff's testimony "not entirely credible" for the following reasons : (1) Plaintiff's testimony about work and job-search activities was inconsistent and it suggested a greater capacity for work-related activities than Plaintiff alleged; (2) Plaintiff's daily activities are inconsistent with her alleged limitations; and (3) Plaintiff offered inconsistent information about her symptoms and limitations. The Court affirms the ALJ's finding.


///

A.  Work and Job-Search Activities

The ALJ noted that Plaintiff amended her alleged onset date to account for nearly 12 months of SGA[2]-level work that she engaged in despite her alleged impairments. Tr. 17. In addition, the fact that Plaintiff continued to apply for jobs after leaving Harry & David suggested to the ALJ that she would have been able to work if she had been offered a position. *Id.* The ALJ also found that Plaintiff was laid off from Harry & David and did not stop working there due to impairment-related reasons. *Id.*

Contrary to Plaintiff's argument, the ALJ did not discount her credibility because she had a "strong work record." *See* Pl. Br. 14 ("A strong work record usually bolsters a claimant's credibility."). The ALJ discounted Plaintiff's credibility because she initially filed her disability application in May of 2012 and alleged an onset date of November 20, 2011, yet she continued to work through the end of 2012. The ALJ reasonably found that this suggests Plaintiff was still able to work from her initial alleged onset date until she stopped working, contrary to what she claimed in her DIB application. In addition, the ALJ reasonably discounted Plaintiff's credibility due to the incongruence between the fact that she continued to apply for jobs after ending her employment with Harry & David and her testimony that she would not have accepted any such jobs if they had been offered.

On the other hand, the Court agrees with Plaintiff that the ALJ erred when he discounted her credibility because he questioned the reasons she stopped working at Harry & David. The ALJ stated that Plaintiff's "testimony suggested that her last job ended when she was laid off, ergo she did not stop working for impairment-related reasons." Tr. 17. However, Plaintiff clearly testified that she was asked to be laid off from Harry & David because the sitting requirements of

---

[2] To be eligible for disability benefits, a person must be unable to engage in substantial gainful activity (SGA). 20 C.F.R. § 404.1520(b) and §416.920(b).

the job made it too painful to perform. Tr. 36. Thus, she was both laid off *and* she stopped

working for impairment-related reasons.

    B.  Daily Activities

    The ALJ provides substantial evidence to support his conclusion that Plaintiff's daily

activities conflict with her alleged limitations. *See Orn*, 495 F.3d at 639 (proper to discount a

claimant's credibility where daily activities contradict the claimant's testimony).

    Plaintiff continues to play tennis at least weekly when she is able and she was going

camping and boating up until a year before the administrative hearing. Tr. 17. In addition, at the

time Plaintiff completed most of her pre-hearing reports, which claimed substantial limitations,

she was still engaging in work activity consistent with SGA. *Id.* Plaintiff reported that she was

unable to attend her children's school events, yet she also described attending her child's

performance the month before the administrative hearing. Tr. 17. In addition, Plaintiff alleged

that she could not do household chores, yet she admitted to sharing chores with her significant

other until he was laid off and had more time around the house. *Id.*

    Plaintiff unsuccessfully attempts to parse each of the ALJ's statements to show they are

unsupported by the evidence. For example, Plaintiff argues that she never testified that she went

camping or boating. *See* Pl.'s Br. 15. However, Plaintiff did testify, in response to a question

regarding the type and frequency of any family outings, that she and her family had used her

son's boat and the family trailer "over a year ago." Tr. 41. This testimony supports the ALJ's

inference that Plaintiff had been boating and camping within the same time period in which she

alleged significant limitations in her ability to sit or stand. In addition, while Plaintiff argues

her attendance at her son's school performance was not inconsistent with her testimony that she

can stand for 30-40 minutes at a time, Plaintiff does not address the inconsistency between her attendance and her testimony that she does not attend any school activities.

Plaintiff essentially disagrees with the ALJ's interpretation of the evidence and asks the Court to adopt her interpretation of the record instead. While the evidence may be amenable to more than one rational interpretation, the Court cannot substitute its own judgment for that of the Commissioner. *Parra v. Astrue,* 481 F.3d 742, 746 (9th Cir. 2007); *see also Andrews,* 53 F.3d at 1039–40 (explaining that the court must uphold the ALJ's decision "where the evidence is susceptible to more than one rational interpretation.").

C.  Symptoms and Limitations

The ALJ offered several examples of instances in which Plaintiff offered inconsistent information about her symptoms and limitations. Plaintiff's effort to justify each instance is unavailing. For example, the ALJ noted that Plaintiff repeatedly stated that sitting exacerbated her symptoms, yet she also repeatedly stated that she needed to sit "the rest of the day" to recover from activities such as tennis. Tr. 17. In addition, Plaintiff has not followed medical advice consistently. She described a very sedentary lifestyle, despite acknowledging her doctor's advice that she increase physical activity. *Id.*

The ALJ also found that Plaintiff was "invested in her perceived disability." Tr. 17. The ALJ noted Plaintiff's use of a cane even though no medical provider had recommended one and Plaintiff did not appear to need a cane. *Id.* Plaintiff disputes the ALJ's characterization of her purchase of a cane as unnecessary and as evidence of Plaintiff's investment in her perceived disability. Again, Plaintiff asks the court to substitute its own judgment where the ALJ has provided a rational interpretation of the evidence. Plaintiff testified that she got a cane in approximately May of 2012 but that she was not allowed to use it at Fred Meyer. Tr. 35.

17 - OPINION & ORDER

Therefore, her argument that she purchased the cane as a less restrictive alternative to the wheelchair prescribed by Dr. McMahon in September of 2013 is not persuasive. *See* Tr. 474. It is undisputed that no doctor ever prescribed a cane for Plaintiff. Thus, it was rational for the ALJ to interpret her use of the cane as unnecessary and seeking to create a certain portrayal of disability.

Even if the ALJ erred in his interpretation of Plaintiff's cane use, he has provided more than enough clear and convincing reasons, supported by substantial evidence, to find that Plaintiff's impairments would not reasonably be expected to produce the symptoms Plaintiff describes. Thus, the Court upholds the ALJ's decision to find Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms not entirely credible.

## III.    Lay Witness Testimony

Plaintiff argues that the ALJ erred by failing to fully credit the statements of Plaintiff's significant other, Mr. Maerz. "Lay testimony as to a claimant's symptoms or how an impairment affects the claimant's ability to work is competent evidence that the ALJ must take into account." Molina, 674 F.3d at 1114. The ALJ must give reasons "germane to the witness" when discounting the testimony of lay witnesses. Valentine, 574 F.3d at 694. Inconsistency with the evidence is a germane reason for discounting lay witness testimony. Bayliss, 427 F.3d at 1218.

In a July 2012 Third Party Function Report, Mr. Maerz indicated that Plaintiff could barely work part-time and "calls in sick several times a month and never used to." Tr. 250. Mr. Maerz stated that Plaintiff would go to work and then come home and sit in her chair until bedtime. *Id.* According to Mr. Maerz, Plaintiff had difficulty putting on her underwear and pants, making most meals, completing household chores, and shopping. Tr. 250-55. Mr. Maerz wrote that Plaintiff could not sit or stand for long periods of time and was limited in her ability to walk. Tr. 255. He also indicated that Plaintiff uses a cane and crutches. Tr. 256.

The ALJ gave Mr. Maerz's report only "some weight" because the medical evidence of record did not demonstrate limitations as severe as those described by Mr. Maerz. Tr. 17. For example, there was no documented medical basis for the need to use a cane or crutches. *Id.* In addition, at the time of the report, Plaintiff continued to perform SGA-level work. *Id.* In addition, to the extent Mr. Maerz's report "parroted" Plaintiff's allegations to him, the ALJ discounted the allegations for the same reasons discussed above related to Plaintiff's credibility.

The ALJ cited to evidence in the record which conflicted with specific statements made by Mr. Maerz. Thus, the ALJ's failure to fully credit the testimony of Mr. Maerz was supported by germane reasons.

## IV.    Remand for Further Administrative Proceedings

Because the ALJ erred in his consideration of Dr. McMahon's opinion, the Court concludes that remand is appropriate. In social security cases, remands may be for additional proceedings or for an award of benefits. *E.g., Garrison v. Colvin*, 759 F.3d 995, 1019 (9th Cir. 2014) (explaining that if "additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded [,]" but "in appropriate circumstances courts are free to reverse and remand a determination by the Commissioner with instructions to calculate and award benefits") (internal quotation marks omitted); *Banks v. Colvin*, No. 3:14-CV-01306-HZ, 2015 WL 4628031, at *6 (D. Or. Aug. 3, 2015) (explaining that remanding for additional proceedings is the ordinary and "proper course," except in rare circumstances) (quoting *Treicher v. Comm'r*, 775 F.3d 1090, 1101 (9th Cir. 2014)).

To determine which type of remand is appropriate, the Ninth Circuit uses a three-part test. *Id.* at 1020; *see also Treicher*, 775 F.3d at 1100 (2014) ("credit-as-true" rule has three steps). First, the ALJ must fail to provide legally sufficient reasons for rejecting evidence,

19 - OPINION & ORDER

whether claimant testimony or medical opinion. *Garrison*, 759 F.3d at 1020. Second, the record must be fully developed and further administrative proceedings would serve no useful purpose. *Id.* Third, if the case is remanded and the improperly discredited evidence is credited as true, the ALJ would be required to find the claimant disabled. *Id.* To remand for an award of benefits, each part must be satisfied. *Id.*; *see also Treicher*, 775 F.3d at 1101 (when all three elements are met, "a case raises the 'rare circumstances' that allow us to exercise our discretion to depart from the ordinary remand rule" of remanding to the agency).

The first part of the test is met here because, as explained above, the ALJ committed several legal errors in his analysis of Plaintiff's application for benefits. The next question is whether additional administrative proceedings would be helpful. In evaluating this issue, a court considers "whether the record as a whole is free from conflicts, ambiguities, or gaps, whether all factual issues have been resolved, and whether the claimant's entitlement to benefits is clear under the applicable legal rules." *Treichler*, 775 F.3d at 1103–04.

Here, additional administrative proceedings are necessary. While the ALJ failed to properly evaluate the medical opinion of Dr. McMahon, this opinion remains in conflict with other medical opinions in the record.The Court is unable to say whether or not the RFC accurately represents Plaintiff's abilities. In other words, Plaintiff's entitlement to benefits is far from "clear under the applicable legal rules." *See id.* Accordingly, a remand for additional proceedings is required to allow the ALJ to address the errors and ambiguities detailed above.

///

///

20 - OPINION & ORDER

**CONCLUSION**

The Court reverses and remands the case for further administrative proceedings because the ALJ erred by rejecting the opinion of treating provider Dr. McMahon.

IT IS SO ORDERED.

Dated this _____ day of _____, 2017

_____
MARCO A. HERNÁNDEZ
United States District Judge

21 - OPINION & ORDER